IN THE CIRCUIT COURT FOR THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

GEORGES ELYSEE,

                    Plaintiff,

vs.                                                           Case No.


HEARST COMMUNICATIONS, INC., d/b/a
White Directory Publishers, White Directory,
and The Talking Phone Book and
LOCALEDGE MEDIA, INC., f/k/a
White Directory of Florida, Inc., d/b/a
White Directory Publishers, White
Directory and The Talking Phone Book,

                    Defendants.
_____/

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff GEORGES ELYSEE (hereinafter "Plaintiff"), hereby files this suit against

Defendant HEARST COMMUNICATIONS, INC., d/b/a White Directory Publishers, White

Directory, and The Talking Phone Book and Defendant LOCALEDGE MEDIA, INC., f/k/a

White Directory of Florida, Inc., d/b/a White Directory Publishers, White Directory, and The

Talking Phone Book (collectively "Defendants"), and alleges:

### NATURE OF CLAIMS

1.      This is an action against Defendants to redress the deprivation of rights secured to

Plaintiff by Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended by the

Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq., the Florida Civil Rights Act (hereinafter

"FCRA"), FLA. STAT. §§ 760.01 et seq., and the Civil Rights Act of 1866, as amended, 42 U.S.C.

§ 1981 (hereinafter § 1981).

## STATUTORY PREREQUISITES TO SUIT

2.    Plaintiff has exhausted his administrative remedies and complied with all statutory prerequisites to maintaining the claims asserted herein as required by Title VII and the FCRA. (*See* Exhibit A:  Right to Sue Letter from U.S. Equal Employment Opportunity Commission). Further, Plaintiff has performed and fulfilled all conditions precedent to maintaining the claims asserted herein as required by Title VII and the FCRA. (*See id.*).

## JURISDICTION AND PARITES

3.    This is an action for damages in excess of fifteen thousand (15,000) dollars, exclusive of interest and costs.

4.    The alleged unlawful acts of Defendants giving rise to this action were committed in Marion County, Florida, within the jurisdiction of the Circuit Court for the Fifth Judicial Circuit in and for Marion County, Florida.

5.    Plaintiff is a citizen of Florida and the United States.

6.    Defendant HEARST COMMUNICATIONS, INC., d/b/a White Directory Publishers, White Directory, and The Talking Phone Book (hereinafter "Hearst") is a Delaware corporation. In documents files with the Florida Department of State, Division of Corporations, Hearst lists 300 W. 57th Street, New York, New York as its principal address. Hearst transacts business under the assumed or fictitious name of White Directory Publishers, White Directory, and The Talking Phone Book. Further, Hearst has an office for transaction of its customary business, and has an agent or other representative, in Marion County, Florida.

7.    Defendant LOCALEDGE MEDIA, INC., f/k/a White Directory of Florida, Inc., d/b/a White Directory Publishers, White Directory, and The Talking Phone Book (hereinafter "Local Edge") is a Delaware corporation. In documents files with the Florida Department of State, Division of Corporations, Local Edge lists 300 W. 57th Street, New York, New York as its

2

principal address.  Local Edge was formerly known as White Directory of Florida, Inc.  Local

Edge transacts business under the assumed or fictitious name of White Directory Publishers,

White Directory, and The Talking Phone Book.  Further, Local Edge has an office for transaction

of its customary business, and has an agent or other representative, in Marion County, Florida.

## GENERAL ALLEGATIONS

8.    Plaintiff, who is African-American, is a member of a member of a class protected

against race discrimination by Title VII, the FCRA, and § 1981.

9.    At all times material hereto, Hearst was a person within the meaning of Title VII,

42 U.S.C. § 2000e(a), engaged in an industry affecting commerce who had fifteen or more

employees for each working day in each of twenty or more calendar weeks in the current or

preceding calendar year.  As such, Hearst was an employer within the meaning of Title VII, 42

U.S.C. § 2000e(b).

10.   At all times material hereto, Hearst was a person within the meaning of the

FCRA, FLA. STAT. § 760.02(6), employing fifteen or more employees for each working day in

each of twenty or more calendar weeks in the current or preceding calendar year.  As such,

Hearst was an employer within the meaning of the FCRA, FLA. STAT. § 760.02(7).

11.   At all times material hereto, Local Edge was a person within the meaning of Title

VII, 42 U.S.C. § 2000e(a), engaged in an industry affecting commerce who had fifteen or more

employees for each working day in each of twenty or more calendar weeks in the current or

preceding calendar year.  As such, Local Edge was an employer within the meaning of Title VII,

42 U.S.C. § 2000e(b).

12.   At all times material hereto, Local Edge was a person within the meaning of the

FCRA, FLA. STAT. § 760.02(6), employing fifteen or more employees for each working day in

each of twenty or more calendar weeks in the current or preceding calendar year.  As such, Local

Edge was an employer within the meaning of the FCRA, FLA. STAT. §.760.02(7).

## COUNT I: DISCRIMINATION UNDER TITLE VII AGAINST HEARST

13.    Plaintiff hereby restates the allegations contained in paragraphs two through twelve as though stated fully and completely herein.

14.    This claim for discrimination on the basis of race is asserted against Hearst pursuant to Title VII.

15.    At all times material hereto, Plaintiff was an employee of Hearst within the meaning of Title VII, the FCRA, and § 1981. As an employee of Hearst for purposes of Title VII, the FCRA, and § 1981, Plaintiff was protected against discrimination because of race with respect to the compensation, terms, conditions, or privileges of his employment.

16.    At all times material hereto, Hearst was Plaintiff's employer within the meaning of Title VII, the FCRA, and § 1981. As his employer for purposes of Title VII, the FCRA, and § 1981, Hearst was prohibited from discriminating against Plaintiff because of race with respect to the compensation, terms, conditions, or privileges of his employment.

17.    Plaintiff's employment relationship with Hearst commenced in or around June 2007, and ended when he was terminated on or about March 30, 2009. During his employment with Hearst, Plaintiff worked as a sales representative.

18.    At all times material hereto, Timothy Congdon (hereinafter "Congdon"), who is Caucasian, was an employee and/or agent of Hearst. Further, Congdon was acting within the scope of his employment and/or agency with Hearst when he committed the acts alleged herein.

19.    During his employment, Plaintiff possessed the skills and background necessary to perform the duties of the position of sales representative. As such, Plaintiff was qualified for the position.

20.    During his employment, Hearst, through its employees and/or agents, including

Congdon, treated Plaintiff differently and less favorably from similarly situated employees outside the protected class. The disparate treatment of Plaintiff culminated in a series of adverse employment actions on the basis of race, including, but not limited to: subjecting Plaintiff to disciplinary action; failing to provide Plaintiff with work-related assistance and cooperation, and thereby inflicting direct economic harm on Plaintiff; providing employees outside the protected class with economically advantageous work-related opportunities and assignments; allowing an employee outside the protected class to retain a commission to which Plaintiff was entitled; segregating the sales staff on the basis of race; after Plaintiff complained about race discrimination, failing to conduct a reasonable, good-faith investigation; and terminating Plaintiff.

21.    The discriminatory actions of Hearst, through its employees and/or agents, against Plaintiff, when considered individually and/or collectively, constitute adverse employment actions for purposes of Title VII, the FCRA, and § 1981. In particular, the actions constituted an ultimate employment decision, altered the compensation, terms, conditions, or privileges of Plaintiff's employment, and/or adversely affected Plaintiff's status an employee.

22.    The adverse employment actions were taken because of Plaintiff's race. More specifically, Plaintiff's race played a motivating factor in the adverse employment actions.

23.    In taking adverse employment action against Plaintiff because of his race, Hearst intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

24.    As a proximate result of the aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury; and costs, including

attorney's fees, in pursuing redress for the deprivation of his civil rights.

25.    The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, give rise to a cause of action under Title VII. In particular, Title VII forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

26.    The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

27.    If Plaintiff prevails on his Title VII claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Hearst violated Plaintiff's rights under Title VII; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Hearst from engaging in any such unlawful employment practice under Title VII, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT II: DISCRIMINATION UNDER FCRA AGAINST HEARST

28.    Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs fifteen through twenty-four, as though stated fully and completely herein.

29.     This claim for discrimination on the basis of race is asserted against Hearst pursuant to the FCRA.

30.     By and through acts alleged more specifically in Count I, Hearst intentionally discriminated against Plaintiff on the basis of race with respect to the compensation, terms, conditions, or privileges of his employment.

31.     As a proximate result of the aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph twenty-four.

32.     The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, give rise to a cause of action under the FCRA. In particular, the FCRA forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

33.     The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

34.     If Plaintiff prevails on her FCRA claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to the FCRA.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Hearst violated Plaintiff's rights under the FCRA; an order for compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Hearst from engaging in such

7

unlawful employment practice under the FCRA, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

### COUNT III: DISCRIMINATION UNDER § 1981 AGAINST HEARST

35.     Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs fifteen through twenty-four, as though stated fully and completely herein.

36.     This claim for discrimination on the basis of race is asserted against Hearst pursuant to § 1981.

37.     Plaintiff's employment relationship with Hearst consisted of rendition of services in exchange for Hearst's payment of wages and, therefore, was contractual. Further, the compensation, terms, conditions, or privileges of Plaintiff's employment were part of Plaintiff's contractual relationship with Hearst. As an employee of Hearst for purposes of § 1981, Plaintiff was protected against discrimination on the basis of race in the making and enforcement of contracts, including employment contracts. Correlatively, as his employer for purposes of § 1981, Hearst was prohibited from discriminating against Plaintiff in the making and enforcement of contracts, including employment contracts.

38.     By and through acts alleged more specifically in Count I, Hearst intentionally discriminated against Plaintiff on the basis of race with respect to the compensation, terms, conditions, or privileges of his employment.

39.     As a proximate result of the aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph twenty-four.

40.     The aforementioned intentional discriminatory acts of Hearst, through its

8

employees and/or agents, give rise to a cause of action under § 1981. In particular, § 1981 forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

41.    The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights. ·

42.    If Plaintiff prevails on his § 1981 claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to § 1981.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Hearst violated Plaintiff's rights under § 1981; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Hearst from engaging in such unlawful employment practice under § 1981, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT IV: HOSTILE ENVIRONMENT UNDER TITLE VII AGAINST HEARST

43.    Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs fifteen through twenty-four, as though stated fully and completely herein.

44.    This claim for hostile work environment harassment on the basis of race is asserted against Hearst pursuant to Title VII.

9

45.    During his employment, Hearst, by and through its employees and/or agents, including Congdon, subjected Plaintiff to discriminatory intimidation, ridicule, and insult on the basis of race. The race-based acts of harassment included, but were not limited to:  racial graffiti in the workplace; a racially derogatory picture in the workplace depicting a Caucasian standing behind an African-American slave with a whip; subjecting Plaintiff to disciplinary action; failing to provide Plaintiff with work-related assistance and cooperation, and thereby inflicting direct economic harm on Plaintiff; providing employees outside the protected class with economically advantageous work-related opportunities and assignments; segregating the sales staff on the basis of race; allowing an employee outside the protected class to retain a commission to which Plaintiff was entitled; mocking a stereotyped manner of African-American speech; after Plaintiff complained about race discrimination, failing to conduct a reasonable, good-faith investigation.

46.    The harassment of Plaintiff was unwelcome in that it was uninvited and undesired by Plaintiff.  Further, Plaintiff indicated by his conduct that the harassment was unwelcome by complaining to management about the harassing behavior.

47.    The harassment of Plaintiff occurred because of his race.  Plaintiff was subjected to explicitly derogatory race-based behavior.  Further, Congdon did not subject employees who are not members of Plaintiff's protected class to the same harassing behavior.  Thus, Plaintiff was subjected to disadvantageous terms and conditions of employment to which employees outside the protected class were not subjected.  As such, the harassment constituted discrimination on the basis of Plaintiff's race

48.  .  The harassment was so severe and/or pervasive that it altered the terms, conditions, or privileges of Plaintiff's employment by creating a work environment which Plaintiff perceived as hostile or abusive.   Plaintiff felt uncomfortable, humiliated, and intimidated at work.  Thus, the harassing behavior was offensive to his personally and directly

affected his working environment.

49. The harassment was so severe and/or pervasive that it altered the compensation, terms, conditions or privileges of Plaintiff's employment by creating a working environment which a reasonable person, considering all of the circumstances, would have found hostile or abusive. The harassment was severe in that Plaintiff's workplace involved discriminatory intimidation, ridicule, and insult. The harassment was pervasive in that Plaintiff was repeatedly subjected to race-based harassing behavior. Further, the cumulative effect of the harassment unreasonably interfered with Plaintiff's work performance by making it more difficult to do his job.

50. Hearst knew and/or should have known of the harassing behavior against Plaintiff. Hearst had actual knowledge because Plaintiff complained to management about the harassment. Further, under the totality of circumstances, the harassment of Plaintiff was so pervasive as to provide Hearst with constructive knowledge of the harassment. Despite having actual and/or constructive knowledge of the harassment against Plaintiff, Hearst unreasonably failed to take immediate and appropriate remedial action to stop the harassment and prevent such behavior from recurring against Plaintiff. As such, Hearst is directly liable for the hostile work environment harassment because of its failure to take prompt and effective remedial action upon receiving notice of the harassing behavior.

51. Congdon, who possessed supervisory authority over Plaintiff, was aided in committing the harassment against Plaintiff by virtue of his agency relationship with Hearst. Because Congdon was a supervisor of Plaintiff, with immediate or successively higher supervisory authority over him, Hearst is vicariously liable for the hostile work environment harassment. Further, Hearst is automatically vicariously liable for the hostile environment harassment because the harassment culminated in the taking of tangible employment action

against Plaintiff. More specifically, the harassment resulted in a tangible employment action when Plaintiff's employment was terminated on or about March 30, 2009.

52. As a proximate result of the aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph twenty-four.

53. The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, give rise to a cause of action under Title VII. In particular, Title VII forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

54. The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

55. If Plaintiff prevails on his Title VII claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Hearst violated Plaintiff's rights under Title VII; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Hearst from engaging in any such unlawful employment practice under Title VII, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT V: HOSTILE ENVIRONMENT UNDER FCRA AGAINST HEARST

56.     Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs fifteen through twenty-four and paragraphs forty-five through fifty-one, as though stated fully and completely herein.

57.     This claim for hostile work environment harassment on the basis of race is asserted against Hearst pursuant to the FCRA.

58.     By and through acts alleged more specifically in Count IV, Hearst intentionally discriminated against Plaintiff on the basis of race with respect to the compensation, terms, conditions, or privileges of his employment.

59.     As a proximate result of the aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph twenty-four.

60.     The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, give rise to a cause of action under the FCRA. In particular, the FCRA forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

61.     The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

62.     If Plaintiff prevails on his FCRA claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to the FCRA.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Hearst violated Plaintiff's rights under the FCRA; an order for compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life,

13

dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Hearst from engaging in such unlawful employment practice under the FCRA, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

### COUNT VI: HOSTILE ENVIRONMENT UNDER § 1981 AGAINST HEARST

63.     Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs fifteen through twenty-four, paragraph thirty-seven, and paragraphs forty-five through fifty-one, as though stated fully and completely herein.

64.     This claim for hostile work environment harassment on the basis of race is asserted against Hearst pursuant to § 1981.

65.     By and through acts alleged more specifically in Count IV, Hearst intentionally discriminated against Plaintiff on the basis of race with respect to the compensation, terms, conditions, or privileges of his employment.

66.     As a proximate result of the aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph twenty-four.

67.     The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, give rise to a cause of action under § 1981. In particular, § 1981 forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

68.     The aforementioned intentional discriminatory acts of Hearst, through its

14

employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

69.     If Plaintiff prevails on his § 1981 claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to § 1981.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Hearst violated Plaintiff's rights under § 1981; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Hearst from engaging in such unlawful employment practice under § 1981, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT VII: RETALIATION UNDER TITLE VII AGAINST HEARST

70.     Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs fifteen through twenty-four and paragraphs forty-five through fifty-one, as though stated fully and completely herein.

71.     This claim for retaliation is asserted against Hearst pursuant to Title VII.

72.     Title VII, the FCRA, and § 1981 prohibit employers, such as Hearst, from taking adverse employment action against employees in retaliation for their engaging in statutorily protected activity under Title VII, the FCRA, and § 1981.

73.     As an employee of Hearst, Plaintiff was protected against retaliatory adverse employment action for engaging in statutorily protected activity under Title VII, the FCRA, and

§ 1981. More specifically, Plaintiff was protected against retaliatory adverse employment action for opposing any practice of Hearst made an unlawful employment practice by Title VII, the FCRA, and § 1981. Further, Plaintiff was protected against retaliation in employment decisions for opposing race discrimination in the workplace.

74.    Plaintiff engaged in statutorily protected activity when he complained to management about the race-based discriminatory behavior in the workplace. In opposing the discriminatory behavior, Plaintiff had a good faith, reasonable belief that he had been or was being subjected to unlawful discrimination on the basis of race. As such, Plaintiff engaged in statutorily protected activity within the meaning of Title VII, the FCRA, and § 1981.

75.    In response to Plaintiff's statutorily protected activity, Hearst, through its employee and/or agents, adopted a pattern of subjecting Plaintiff to a series of retaliatory adverse employment actions, including, but not limited to:  subjecting Plaintiff to disciplinary action; failing to provide Plaintiff with work-related assistance and cooperation, and thereby inflicting direct economic harm on Plaintiff; after Plaintiff complained about race discrimination, failing to conduct a reasonable, good-faith investigation; and terminating Plaintiff.

76.    The reprisals were a materially adverse employment action in that the actions, whether considered individually or collectively, constituted an ultimate employment decision, altered the terms, conditions or privileges of Plaintiff's employment, and/or adversely affected Plaintiff's status as an employee. Further, the retaliatory acts were reasonably likely to deter employees from engaging in protected activity. As such, the retaliatory acts constitute adverse employment actions for purposes of Title VII, the FCRA, and § 1981.

77.    Hearst, through its employees and/or agents, was aware of Plaintiff's statutorily protected activity when it subjected him to adverse employment action.

78.    The adverse employment actions were taken because of Plaintiff's statutorily

16

protected activity. More specifically, Plaintiff's protected activity played a motivating factor in the adverse employment actions.

79.    In taking adverse employment action against Plaintiff because of his statutorily protected activity, Hearst intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

80.    As a proximate result of the aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph twenty-four.

81.    The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, give rise to a cause of action under Title VII. In particular, Title VII prohibits employers from taking adverse employment action against employees in retaliation for their engaging in statutorily protected activity.

82.    The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

83.    If Plaintiff prevails on his Title VII claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Hearst violated Plaintiff's rights under Title VII; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Hearst from engaging in any such

unlawful employment practice under Title VII, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT VIII: RETALIATION UNDER FCRA AGAINST HEARST

84.   Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs fifteen through twenty-four, paragraphs forty-five through fifty-one, and paragraphs seventy-two through seventy-nine, as though stated fully and completely herein.

85.   This claim for retaliation is asserted against Hearst pursuant to the FCRA.

86.   By and through acts alleged more specifically in Count VII, Hearst intentionally discriminated against Plaintiff respect to the compensation, terms, conditions, or privileges of his employment.

87.   As a proximate result of the aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph twenty-four.

88.   The aforementioned intentional discriminatory acts of Hearst through its employees and/or agents, give rise to a cause of action under the FCRA. In particular, the FCRA prohibits employers from taking adverse employment action against employees in retaliation for their engaging in statutorily protected activity

89.   The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

90.   If Plaintiff prevails on his FCRA claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to the FCRA.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Hearst violated Plaintiff's rights under the FCRA; an order for compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Hearst from engaging in such unlawful employment practice under the FCRA, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT IX: RETALIATION UNDER § 1981 AGAINST HEARST

91. Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs fifteen through twenty-four, paragraph thirty-seven, paragraphs forty-five through fifty-one, and paragraphs seventy-two through seventy-nine, as though stated fully and completely herein.

92. This claim for retaliation is asserted against Hearst pursuant to § 1981.

93. By and through acts alleged more specifically in Count VII, Hearst intentionally discriminated against Plaintiff respect to the compensation, terms, conditions, or privileges of his employment.

94. As a proximate result of the aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph twenty-five.

95. The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, give rise to a cause of action under § 1981. In particular, § 1981

19

prohibits employers from taking adverse employment action against employees in retaliation for their engaging in statutorily protected activity

96.   The aforementioned intentional discriminatory acts of Hearst, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

97.   If Plaintiff prevails on his § 1981 claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to § 1981.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Hearst violated Plaintiff's rights under § 1981; an order for compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Hearst from engaging in such unlawful employment practice under § 1981, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT X: DISCRIMINATION UNDER TITLE VII AGAINST LOCAL EDGE

98.   Plaintiff hereby restates the allegations contained in paragraphs two through twelve as though stated fully and completely herein.

99.   This claim for discrimination on the basis of race is asserted against Local Edge pursuant to Title VII. Further, this claim and the allegations herein are asserted in the alternative to the claim against Hearst in Count I.

100.   If Plaintiff was not an employee of Hearst within the meaning of Title VII, the FCRA, and § 1981, then Plaintiff was an employee of Local Edge for purposes of Title VII, the

20

FCRA, and § 1981. As an employee of Local Edge for purposes of Title VII, the FCRA, and § 1981, Plaintiff was protected against discrimination because of race with respect to the compensation, terms, conditions, or privileges of his employment.

101.    If Hearst was not the employer of Plaintiff within the meaning of Title VII, the FCRA, and § 1981, then Local Edge was the employer of Plaintiff for purposes of Title VII, the FCRA, and § 1981. As his employer for purposes of Title VII, the FCRA, and § 1981, Local Edge was prohibited from discriminating against Plaintiff because of race with respect to the compensation, terms, conditions, or privileges of his employment.

102.    Plaintiff's employment relationship with Local Edge commenced in or around June 2007, and ended when he was terminated on or about March 30, 2009. During his employment with Local Edge, Plaintiff worked as a sales representative.

103.    At all times material hereto, Timothy Congdon (hereinafter "Congdon"), who is Caucasian, was an employee and/or agent of Local Edge. Further, Congdon was acting within the scope of his employment and/or agency with Local Edge when he committed the acts alleged herein.

104.    During his employment, Plaintiff possessed the skills and background necessary to perform the duties of the position of sales representative. As such, Plaintiff was qualified for the position.

105.    During his employment, Local Edge, through its employees and/or agents, including Congdon, treated Plaintiff differently and less favorably from similarly situated employees outside the protected class. The disparate treatment of Plaintiff culminated in a series of adverse employment actions on the basis of race, including, but not limited to: subjecting Plaintiff to disciplinary action; failing to provide Plaintiff with work-related assistance and cooperation, and thereby inflicting direct economic harm on Plaintiff; providing employees

21

outside the protected class with economically advantageous work-related opportunities and assignments; allowing an employee outside the protected class to retain a commission to which Plaintiff was entitled; segregating the sales staff on the basis of race; after Plaintiff complained about race discrimination, failing to conduct a reasonable, good-faith investigation; and terminating Plaintiff.

106.   The discriminatory actions of Local Edge, through its employees and/or agents, against Plaintiff, when considered individually and/or collectively, constitute adverse employment actions for purposes of Title VII, the FCRA, and § 1981. In particular, the actions constituted an ultimate employment decision, altered the compensation, terms, conditions, or privileges of Plaintiff's employment, and/or adversely affected Plaintiff's status an employee.

107.   The adverse employment actions were taken because of Plaintiff's race. More specifically, Plaintiff's race played a motivating factor in the adverse employment actions.

108.   In taking adverse employment action against Plaintiff because of his race, Local Edge intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

109.   As a proximate result of the aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury; and costs, including attorney's fees, in pursuing redress for the deprivation of his civil rights.

110.   The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, give rise to a cause of action under Title VII. In particular, Title VII forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

22

111.    The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

112.    If Plaintiff prevails on his Title VII claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Local Edge violated Plaintiff's rights under Title VII; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Local Edge from engaging in any such unlawful employment practice under Title VII, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT XI: DISCRIMINATION UNDER FCRA AGAINST LOCAL EDGE

113.    Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs one hundred through one hundred and nine, as though stated fully and completely herein.

114.    This claim for discrimination on the basis of race is asserted against Local Edge pursuant to the FCRA.  Further, this claim and the allegations herein are asserted in the alternative to the claim against Hearst in Count II.

115.    By and through acts alleged more specifically in Count X, Local Edge intentionally discriminated against Plaintiff on the basis of race with respect to the compensation,

23

terms, conditions, or privileges of his employment.

116.    As a proximate result of the aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph one hundred and nine.

117.    The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, give rise to a cause of action under the FCRA. In particular, the FCRA forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

118.    The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

119.    If Plaintiff prevails on her FCRA claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to the FCRA.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Local Edge violated Plaintiff's rights under the FCRA; an order for compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Local Edge from engaging in such unlawful employment practice under the FCRA, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

24

## COUNT XII:  DISCRIMINATION UNDER § 1981 AGAINST LOCAL EDGE

120.   Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs one hundred through one hundred and nine, as though stated fully and completely herein.

121.   This claim for discriminatory on the basis of race is asserted against Local Edge pursuant to § 1981.  Further, this claim and the allegations herein are asserted in the alternative to the claim against Hearst in Count III.

122.   Plaintiff's employment relationship with Local Edge consisted of rendition of services in exchange for Local Edge's payment of wages and, therefore, was contractual. Further, the compensation, terms, conditions, or privileges of Plaintiff's employment were part of Plaintiff's contractual relationship with Local Edge.  As an employee of Local Edge for purposes of § 1981, Plaintiff was protected against discrimination on the basis of race in the making and enforcement of contracts, including employment contracts.  Correlatively, as his employer for purposes of § 1981, Local Edge was prohibited from discriminating against Plaintiff in the making and enforcement of contracts, including employment contracts.

123.   By and through acts alleged more specifically in Count X, Local Edge intentionally discriminated against Plaintiff on the basis of race with respect to the compensation, terms, conditions, or privileges of his employment.

124.   As a proximate result of the aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph one hundred and nine.

125.   The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, give rise to a cause of action under § 1981.  In particular, § 1981 forbids discrimination against any employee on the basis of race with respect to the

25

compensation, terms, conditions, or privileges of employment.

126.  The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

127.  If Plaintiff prevails on his § 1981 claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to § 1981.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Local Edge violated Plaintiff's rights under § 1981; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Local Edge from engaging in such unlawful employment practice under § 1981, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT XIII: HOSTILE ENVIRONMENT UNDER TITLE VII AGAINST LOCAL EDGE

128.  Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs one hundred through one hundred and nine, as though stated fully and completely herein.

129.  This claim for hostile work environment harassment on the basis of race is asserted against Local Edge pursuant to Title VII. Further, this claim and the allegations herein are asserted in the alternative to the claim against Hearst in Count IV.

26

130.    During his employment, Local Edge, by and through its employees and/or agents, including Congdon, subjected Plaintiff to discriminatory intimidation, ridicule, and insult on the basis of race. The race-based acts of harassment included, but were not limited to: racial graffiti in the workplace; a racially derogatory picture in the workplace depicting a Caucasian standing behind an African-American slave with a whip; subjecting Plaintiff to disciplinary action; failing to provide Plaintiff with work-related assistance and cooperation, and thereby inflicting direct economic harm on Plaintiff; providing employees outside the protected class with economically advantageous work-related opportunities and assignments; segregating the sales staff on the basis of race; allowing an employee outside the protected class to retain a commission to which Plaintiff was entitled; mocking a stereotyped manner of African-American speech; after Plaintiff complained about race discrimination, failing to conduct a reasonable, good-faith investigation.

131.    The harassment of Plaintiff was unwelcome in that it was uninvited and undesired by Plaintiff. Further, Plaintiff indicated by his conduct that the harassment was unwelcome by complaining to management about the harassing behavior.

132.    The harassment of Plaintiff occurred because of his race. Plaintiff was subjected to explicitly derogatory race-based behavior. Further, Congdon did not subject employees who are not members of Plaintiff's protected class to the same harassing behavior. Thus, Plaintiff was subjected to disadvantageous terms and conditions of employment to which employees outside the protected class were not subjected. As such, the harassment constituted discrimination on the basis of Plaintiff's race

133.    The harassment was so severe and/or pervasive that it altered the terms, conditions, or privileges of Plaintiff's employment by creating a work environment which Plaintiff perceived as hostile or abusive.    Plaintiff felt uncomfortable, humiliated, and intimidated at work. Thus, the harassing behavior was offensive to his personally and directly

27

affected his working environment.

134. The harassment was so severe and/or pervasive that it altered the compensation, terms, conditions or privileges of Plaintiff's employment by creating a working environment which a reasonable person, considering all of the circumstances, would have found hostile or abusive. The harassment was severe in that Plaintiff's workplace involved discriminatory intimidation, ridicule, and insult. The harassment was pervasive in that Plaintiff was repeatedly subjected to race-based harassing behavior. Further, the cumulative effect of the harassment unreasonably interfered with Plaintiff's work performance by making it more difficult to do his job.

135. Local Edge knew and/or should have known of the harassing behavior against Plaintiff. Local Edge had actual knowledge because Plaintiff complained to management about the harassment. Further, under the totality of circumstances, the harassment of Plaintiff was so pervasive as to provide Local Edge with constructive knowledge of the harassment. Despite having actual and/or constructive knowledge of the harassment against Plaintiff, Local Edge unreasonably failed to take immediate and appropriate remedial action to stop the harassment and prevent such behavior from recurring against Plaintiff. As such, Local Edge is directly liable for the hostile work environment harassment because of its failure to take prompt and effective remedial action upon receiving notice of the harassing behavior.

136. Congdon, who possessed supervisory authority over Plaintiff, was aided in committing the harassment against Plaintiff by virtue of his agency relationship with Local Edge. Because Congdon was a supervisor of Plaintiff, with immediate or successively higher supervisory authority over him, Local Edge is vicariously liable for the hostile work environment harassment. Further, Local Edge is automatically vicariously liable for the hostile environment harassment because the harassment culminated in the taking of tangible employment action

28

against Plaintiff. More specifically, the harassment resulted in a tangible employment action when Plaintiff's employment was terminated on or about March 30, 2009.

137. As a proximate result of the aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph one hundred and nine.

138. The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, give rise to a cause of action under Title VII. In particular, Title VII forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

139. The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

140. If Plaintiff prevails on his Title VII claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Local Edge violated Plaintiff's rights under Title VII; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Local Edge from engaging in any such unlawful employment practice under Title VII, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

29

## COUNT XIV: HOSTILE ENVIRONMENT UNDER FCRA AGAINST LOCAL EDGE

141. Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs one hundred through one hundred and nine, and paragraphs one hundred and thirty through one hundred and thirty-six, as though stated fully and completely herein.

142. This claim for hostile work environment harassment on the basis of race is asserted against Local Edge pursuant to the FCRA. Further, this claim and the allegations herein are asserted in the alternative to the claim against Hearst in Count V.

143. By and through acts alleged more specifically in Count XIII, Local Edge intentionally discriminated against Plaintiff on the basis of race with respect to the compensation, terms, conditions, or privileges of his employment.

144. As a proximate result of the aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph one hundred and nine.

145. The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, give rise to a cause of action under the FCRA. In particular, the FCRA forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

146. The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

147. If Plaintiff prevails on his FCRA claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to the FCRA.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order

declaring that Local Edge violated Plaintiff's rights under the FCRA; an order for compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Local Edge from engaging in such unlawful employment practice under the FCRA, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT XV: HOSTILE ENVIRONMENT UNDER § 1981 AGAINST LOCAL EDGE

148.    Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs one hundred through one hundred and nine, paragraph one hundred and twenty-two, and paragraphs one hundred and thirty through one hundred and thirty-six, as though stated fully and completely herein.

149.    This claim for hostile work environment harassment on the basis of race is asserted against Local Edge pursuant to § 1981. Further, this claim and the allegations herein are asserted in the alternative to the claim against Hearst in Count VI.

150.    By and through acts alleged more specifically in Count XIII, Local Edge intentionally discriminated against Plaintiff on the basis of race with respect to the compensation, terms, conditions, or privileges of his employment.

151.    As a proximate result of the aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph one hundred and nine.

152.    The aforementioned intentional discriminatory acts of Local Edge, through its

31

employees and/or agents, give rise to a cause of action under § 1981. In particular, § 1981 forbids discrimination against any employee on the basis of race with respect to the compensation, terms, conditions, or privileges of employment.

153. The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

154. If Plaintiff prevails on his § 1981 claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to § 1981.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Local Edge violated Plaintiff's rights under § 1981; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Local Edge from engaging in such unlawful employment practice under § 1981, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT XVI: RETALIATION UNDER TITLE VII AGAINST LOCAL EDGE

155. Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs one hundred through one hundred and nine, and paragraphs one hundred and thirty through one hundred and thirty-six, as though stated fully and completely herein.

156. This claim for retaliation is asserted against Local Edge pursuant to Title VII.

32

Further, this claim and the allegations herein are asserted in the alternative to the claim against Hearst in Count VII.

157. Title VII, the FCRA, and § 1981 prohibit employers, such as Local Edge from taking adverse employment action against employees in retaliation for their engaging in statutorily protected activity under Title VII, the FCRA, and § 1981.

158. As an employee of Local Edge, Plaintiff was protected against retaliatory adverse employment action for engaging in statutorily protected activity under Title VII, the FCRA, and § 1981. More specifically, Plaintiff was protected against retaliatory adverse employment action for opposing any practice of Local Edge made an unlawful employment practice by Title VII, the FCRA, and § 1981. Further, Plaintiff was protected against retaliation in employment decisions for opposing race discrimination in the workplace.

159. Plaintiff engaged in statutorily protected activity when he complained to management about the race-based discriminatory behavior in the workplace. In opposing the discriminatory behavior, Plaintiff had a good faith, reasonable belief that he had been or was being subjected to unlawful discrimination on the basis of race. As such, Plaintiff engaged in statutorily protected activity within the meaning of Title VII, the FCRA, and § 1981.

160. In response to Plaintiff's statutorily protected activity, Local Edge, through its employees and/or agents, adopted a pattern of subjecting Plaintiff to a series of retaliatory adverse employment actions, including, but not limited to: subjecting Plaintiff to disciplinary action; failing to provide Plaintiff with work-related assistance and cooperation, and thereby inflicting direct economic harm on Plaintiff; after Plaintiff complained about race discrimination, failing to conduct a reasonable, good-faith investigation; and terminating Plaintiff.

161. The reprisals were a materially adverse employment action in that the actions, whether considered individually or collectively, constituted an ultimate employment decision,

altered the terms, conditions or privileges of Plaintiff's employment, and/or adversely affected

Plaintiff's status as an employee.  Further, the retaliatory acts were reasonably likely to deter

employees from engaging in protected activity.  As such, the retaliatory acts constitute adverse

employment actions for purposes of Title VII, the FCRA, and § 1981.

162.   Local Edge, through its employees and/or agents, was aware of Plaintiff's

statutorily protected activity when it subjected him to adverse employment action.

163.   The adverse employment actions were taken because of Plaintiff's statutorily

protected activity.  More specifically, Plaintiff's protected activity played a motivating factor in

the adverse employment actions.

164.   In taking adverse employment action against Plaintiff because of his statutorily

protected activity, Local Edge intentionally discriminated against Plaintiff with respect to the

compensation, terms, conditions, or privileges of his employment.

165.   As a proximate result of the aforementioned intentional discriminatory acts of

Local Edge, through its employees and/or agents, Plaintiff has suffered damages as alleged more

specifically in paragraph one hundred and nine.

166.   The aforementioned intentional discriminatory acts of Local Edge, through its

employees and/or agents, give rise to a cause of action under Title VII.  In particular, Title VII

prohibits employers from taking adverse employment action against employees in retaliation for

their engaging in statutorily protected activity.

167.   The aforementioned intentional discriminatory acts of Local Edge, through its

employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's

protected civil rights.

168.   If Plaintiff prevails on his Title VII claim, resulting in vindication of his civil

rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to Title VII.

34

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Local Edge violated Plaintiff's rights under Title VII; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Local Edge from engaging in any such unlawful employment practice under Title VII, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT XVII: RETALIATION UNDER FCRA AGAINST LOCAL EDGE

169. Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs one hundred through one hundred and nine, paragraphs one hundred and thirty through one hundred and thirty-six, and paragraphs one hundred and fifty-seven through one hundred and sixty-four, as though stated fully and completely herein.

170. This claim for retaliation is asserted against Local Edge pursuant to the FCRA. Further, this claim and the allegations herein are asserted in the alternative to the claim against Hearst in Count VIII.

171. By and through acts alleged more specifically in Count XVI, Local Edge intentionally discriminated against Plaintiff respect to the compensation, terms, conditions, or privileges of her employment.

172. As a proximate result of the aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, Plaintiff has suffered damages as alleged more

specifically in paragraph one hundred and nine.

173. The aforementioned intentional discriminatory acts of Local Edge through its employees and/or agents, give rise to a cause of action under the FCRA. In particular, the FCRA prohibits employers from taking adverse employment action against employees in retaliation for their engaging in statutorily protected activity

174. The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

175. If Plaintiff prevails on his FCRA claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to the FCRA.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Local Edge violated Plaintiff's rights under the FCRA; an order for compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Local Edge from engaging in such unlawful employment practice under the FCRA, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## COUNT XVIII: RETALIATION UNDER § 1981 AGAINST LOCAL EDGE

176. Plaintiff hereby restates the allegations contained in paragraphs two through twelve, along with the allegations in paragraphs one hundred through one hundred and nine, paragraph one hundred and twenty-two, paragraphs one hundred and thirty through one hundred

and thirty-six, and paragraphs one hundred and fifty-seven through one hundred and sixty-four, as though stated fully and completely herein.

177. This claim for retaliation is asserted against Local Edge pursuant to § 1981. Further, this claim and the allegations herein are asserted in the alternative to the claim against Hearst in Count IX.

178. By and through acts alleged more specifically in Count XVI, Local Edge intentionally discriminated against Plaintiff respect to the compensation, terms, conditions, or privileges of his employment.

179. As a proximate result of the aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically in paragraph one hundred and nine.

180. The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, give rise to a cause of action under § 1981. In particular, § 1981 prohibits employers from taking adverse employment action against employees in retaliation for their engaging in statutorily protected activity

181. The aforementioned intentional discriminatory acts of Local Edge, through its employees and/or agents, were performed with malice or with reckless indifference to Plaintiff's protected civil rights.

182. If Plaintiff prevails on his § 1981 claim, resulting in vindication of his civil rights, then Plaintiff is entitled to a reasonable attorney's fee pursuant to § 1981.

WHEREFORE, Plaintiff prays this Honorable Court grant the following relief: an order declaring that Local Edge violated Plaintiff's rights under § 1981; an order for compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses; an order for back pay, including the economic

value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay; an order for punitive damages as allowed by law; an order for reasonable attorney's fees (including expert fees) and costs; an order enjoining Local Edge from engaging in such unlawful employment practice under § 1981, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands pursuant to FLA. R. CIV. P. 1.430 a trial by jury on all issues so triable.

Dated:  October 26, 2010                                  Respectfully submitted,

James P. Tarquin
Florida Bar No. 906190
Mark Dillman
Florida Bar No. 0276250
JAMES P. TARQUIN, P.A.
1111 N.E. 25th Avenue, Suite 501
Ocala, Florida 34470
Telephone: (352) 401-7671
Facsimile: (352) 401-7673
Attorneys for Plaintiff

38

**EXHIBIT·A**

EEOC Form 161 (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Georges Elysee<br>1 Hemlock Trace<br>Ocala, FL 34472 | From: Miami District Office<br>2 South Biscayne Blvd<br>Suite 2700<br>Miami, FL 33131 |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 510-2009-04453 | Jose E. Camejo,<br>Investigator | (305) 808-1817 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act: This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Equal Pay Act (EPA): EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

JUL 3 0 2010

EEOC Miami District Office

Enclosures(s)

Deiner Franklin-Thomas,
Acting District Director

(Date Mailed)

cc   The Hearst Corporation
c/o Carl Guida, Esq.
300 West 57th Street
New York, NY 10019